## Joseph W. Errant et al. v. The People, ex rel. Harris F. Williams.

### Gen. No. 13,072.

1. CIVIL SERVICE ACT—*what appropriate test of determining rank of office.* The amount of salary connected with particular offices is an appropriate test which may be applied by the civil service commission in determining the respective rank of such offices.

2. CIVIL SERVICE ACT—*section 9 construed.* Section 9 of the Civil Service Act does not vest with the civil service commission an arbitrary discretion to determine when it is practicable to provide promotional examinations. This section, however, does confer a discretionary power upon the commission which, in the absence of abuse, will not be disturbed by the courts.

Mandamus. Appeal from the Circuit Court of Cook County; the Hon. THOMAS G. WINDES, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1906. Reversed, and judgment here. Opinion filed April 30, 1907.

**Statement by the Court.** This is a petition for *mandamus* filed by a citizen and taxpayer, it is said, for a writ of *mandamus* to compel appellants, as civil service commissioners of the city of Chicago, to hold a promotional examination for the position of assistant superintendent of streets in charge of street and alley cleaning, the taking of such examination to be limited to ward superintendents of the city of Chicago.

The petition sets forth the rules of the civil service commission in force from January 23, 1905, down to the time of filing the petition, and states that November 3, 1899, an original public competitive examination was had, free to all persons in the classified service and others for the office of assistant superintendent of streets in charge of street and alley cleaning, but that since that time no further examination for that position has been held; that July 17, 1905, the

superintendent of streets made a requisition on the commissioners for the name of one eligible to appointment to said position, that the commission claimed there was no list of eligibles from which certification could be made and the superintendent of streets thereupon made a temporary appointment with the approval of the commissioners which has been renewed from time to time, the appointee having never taken part in nor passed any examination under the Civil Service Act.

The petition states that there was held April 30, 1898, an original examination for the position of ward superintendents, and that certain named persons passed successfully and were appointed ward superintendents; that said position is of the next lower rank to that of assistant superintendent of streets in charge of street and alley cleaning, and there is no intermediate office between them. It is charged to have been the duty of the civil service commissioners to provide by its rules that vacancies in the office or place of employment of said assistant superintendent shall be filled by promotion from the rank of ward superintendents in all cases where practicable, and that all examinations for promotion to the position of said assistant superintendent shall be competitive among members of the next lower rank known as ward superintendents, who desire to submit themselves to such examination. It is alleged that more than fifteen of such ward superintendents are ready to participate in such examination and will register as candidates for said position, said persons being in all respects qualified for that office of assistant superintendent of streets in charge of street and alley cleaning.

It appears that the superintendent of streets is the head of the bureau of streets and his immediate superior is the commissioner of public works. Next in rank to the superintendent of streets are the assistant superintendent of streets and the assistant superintendent of streets in charge of street and alley cleaning. It is stipulated among other facts that "the duties of assistant superintendent of streets ever since the year 1897 and down to the filing of the petition have

always been the superintendence, subject to the orders of the superintendent of streets, of all matters pertaining to street, sidewalk, culvert and crossing repairing, and all other work pertaining to the streets and alleys of the city, excepting the work of street and alley cleaning and garbage removal." It is also stipulated that neither of these assistant superintendents, the assistant superintendent of streets or the assistant superintendent of streets in charge of street and alley cleaning, has been or is subject to the orders of the other, but both alike are subject to the superintendent of streets, and there is no intermediate office between the latter and his two subordinates above mentioned.

The duties of ward superintendents, it is stipulated, are the direction and superintendence of street, sidewalk, culvert and crossing repairing, and all other work pertaining to the streets, including street and alley cleaning and garbage removal in their respective wards; and as to street and alley cleaning and garbage removal, their immediate superior has always been the assistant superintendent of streets in charge of street and alley cleaning. They also receive orders from his superior, the superintendent of streets; while as to duties pertaining to matters other than street and alley cleaning and garbage removal, the immediate superior of ward superintendents has always been the assistant superintendent of streets, and they receive orders in reference to such work also from his superior, the superintendent of streets. It is stipulated that unless the respective ranks of assistant superintendent of streets in charge of street and alley cleaning and ward superintendents are to be determined by the single test of their respective salaries, the office of ward superintendent is of the next lower rank to that of assistant superintendent of streets in charge of street and alley cleaning.

It appears from the record that the civil service commissioners held an examination January 3, 1906, public, competitive and free, for the position of assistant superintendent of streets in charge of street and alley cleaning, at which eleven persons took the examination, five of whom passed. The highest on the list was Richard T. Fox, who was cer-

tified to the commissioner of public works and appointed
to the position.    The civil service commission had previously
announced that in their judgment it was impracticable to fill
said position by promotional examination, and that ward
superintendents were not next in rank to the assistant super-
intendent of streets in charge of street and alley cleaning,
and had refused to call a promotional examination.    Appel-
lants have placed ward superintendents in the 5th grade,
the salaries being $1,400, and the assistant superintendent
of streets in charge of street and alley cleaning in the 10th
grade, the compensation being $3,000.

The judgment rendered grants relator a peremptory writ
of *mandamus,* commanding respondents, the civil service
commissioners, to hold a promotional examination within
thirty days from date, for the office of assistant superin-
tendent of streets in charge of street and alley cleaning,
unless they shall be prevented from so doing by the fact
that none or not more than one of said ward superintendents
shall register for such promotional examination, and in case
said examination shall be successfully passed by one or more
of said ward superintendents, to make an eligible list com-
posed of such ward superintendents as shall have successfully
passed said examination, and to certify therefrom.

Michael F. Sullivan, for appellants; James Hamilton
Lewis, of counsel.

Hiram T. Gilbert, for appellee.

Mr. Presiding Justice Freeman delivered the opinion
of the court.

Appellant's counsel raise a number of objections to the
judgment complained of, first to the effect that appellee
is not entitled to the writ of *mandamus* since the party apply-
ing for it has failed to show a clear legal right, and the writ
should not issue in doubtful cases; second, that costs were
improperly awarded against the commissioners and execution
improperly issued; and third, that by the amended answer

sought to be filed Richard T. Fox was shown to have a legal interest in the cause and was a necessary party, that it was therefore error to refuse to allow the amended answer to be filed and to bring in said Fox.   In the argument, however, appellants' counsel expressly "waive any advantage we may have by reason of lack of proof or insufficient allegations in the petition or for any other reason whatever" in order to obtain a decision upon the merits.   They tell us the sole desire of appellants is to have the court advise them as to what their powers are in the premises, and do not wish to have the judgment reversed unless at the same time the court should determine the main issue.

The questions to be determined are stated by appellee's counsel to be, first, what is the meaning of the phrase "in all cases where it is practicable," as used in section 9 of the Civil Service Act? and second, are ward superintendents of the rank next below that of the assistant superintendent of streets in charge of street and alley cleaning?

Section 3 of the Civil Service Act requires the commissioners to "classify all the offices and places of employment in such city with reference to the examinations hereinafter provided for,  *  *  *.   The offices and places so classified by the commissioners shall constitute the classified civil service of such city; and no appointments to any of such offices or places shall be made except under and according to the rules hereinafter mentioned."   Section 4 of the Act requires the commission to "make rules to carry out the purposes of the act and for examinations, appointments and removals in accordance with its provisions, and the commission may from time to time make changes in the original rules."   Section 9 of the Act requires that the commission "shall by its rules provide for promotions in such classified service on the basis of ascertained merit and seniority in service and examination, and shall provide in all cases where it is practicable that vacancies shall be filled by promotion. All examinations for promotion shall be competitive among such members of the next lower rank as desire to submit themselves to such examination."

It is contended in behalf of the commission that the clause "in all cases where it is practicable" vests in it discretionary power to determine that question, and that this discretion may not be reviewed by any court except in a proceeding brought directly for that purpose. It appears that the commissioners have announced that in their judgment it was impracticable to fill the position in controversy, that of assistant superintendent in charge of street and alley cleaning, by a promotional examination. It is insisted on the other hand that by the statute it is the commissioners' duty to determine that it is practicable to fill a vacancy by promotion excepting in certain contingencies, and that they cannot arbitrarily determine whether filling a vacancy by promotion is or is not practicable. Among the contingencies referred to, in which the commissioners, it is said, might properly find it impracticable to fill a position by a promotional examination, are said to be (1) when there are not at least two members of the next lower rank; (2) when, although there are two or more persons in the next lower rank, only one of them registers for the examination; and (3) when although two or more are entitled to and do submit themselves to examination none of them succeeds in passing satisfactorily, and it it said that if there are other cases where promotional examinations are impracticable, the case where there are two or more members of a next lower rank entitled to participate in the promotional examination and who do participate and one or more of them successfully passes the examination, is not one of them. We are of opinion that the statute requiring the commission to provide by its rules for promotional examinations "in all cases where practicable" has not vested it with an arbitrary discretion to determine, unless by its rules, whether it is practicable that vacancies shall be filled by promotion. In Ptacek v. The People, 194 Ill., 125–132, it is said: "We do not understand how the civil service commission could under its rules hold an original examination for the position * * * unless it is shown in some way that the vacancy in that office could not be filled by promotion." It follows, we think, that the showing in such case

Errant v. People.

must rest upon something substantial, such as a statutory prohibition, a general rule, or it may be upon evidence, and not upon a mere arbitrary assertion by the commission that the special case is one where a promotional examination is impracticable.     When the case last cited was pending in the Appellate Court (94 Ill. App., 571–576) it was said: "There is no merit in the contention that it is shown by the pleas to have been impracticable to hold the examination as was required by the Civil Service Act and the rules of the board."     In that case the pleas showed that it was practicable, and it was held that the competitive examination should have been limited to employees of the next lower grade. Unless it appears in the present case that a promotional examination is impracticable under the civil service law and the rules applicable, such examination should have been held, and the announcement by the commissioners that in their judgment it was impracticable to fill the position in controversy by a   promotional examination was not a final determination of the question, binding upon the court.     If it was in law and fact so practicable under the rules applicable it was the clear duty of the commission to proceed accordingly, and the courts may so determine.     That this is the rule in this State must, we think, be deemed settled.     Ptacek v. The People, *supra*.

It is admitted in the stipulation as to facts that "unless the respective ranks of assistant superintendent of streets in charge of street and alley cleaning and ward superintendents are to be determined by the single test of their respective salaries, the office of ward superintendent is of the next lower rank to that of assistant superintendent of streets in charge of street and alley cleaning."     It appears that the commission has by its rules (section 4, rule 2) provided that "the terms grade and rank wherever used in the Civil Service Act or Rules, shall be treated as synonymous and convertible terms.     The grades shall be uniform in all classes and divisions and based upon compensation as follows:   1st grade, less than $800 per annum," etc.     There are ten of these grades, the 10th grade being "$3,000 or more per

annum." If therefore the classification by the rule last referred to is made as required by section 4 of the Civil Service Act, "to carry out the purposes of the Act," and is within the power conferred upon the commission by that Act, then the grade or rank of civil service appointees must be deemed to be determined by such classification. The stipulation clearly imports that if the respective ranks of assistant superintendent of streets in charge of street and alley cleaning and of ward superintendents are to be determined by such classification, the office of ward superintendent is not of the next lower rank to that of said assistant superintendent. It appears from appellee's petition that under the classification by compensation there are two appointees in the bureau of streets who rank next below the assistant superintendent of streets in charge of street and alley cleaning, and above the grade of ward superintendents. One of these is the assistant superintendent of streets and another is the clerk for street and alley cleaning. It appears from the statement of admitted facts that the assistant superintendent of streets is the superior of the ward superintendents who are under his direction in matters other than street cleaning and garbage removal, as to which matters they receive directions from the assistant superintendent in charge of street and alley cleaning.

It is argued in behalf of appellee that there is no warrant for determining rank by the test of salary, that rank is regulated by the constitutional or legislative act creating the office. It is, however, the legislative body—in this case the city council—which fixes the salary of city officials, not the civil service commission. It may be that the commissioners might have adopted with equal propriety another system of grading positions, but that the system adopted is reasonable and within the power conferred upon them by the Civil Service Act is, we think, not open to serious question. In People ex rel. Sims v. Collier, 175 N. Y., 196–203, the court said: "The duty which the civil service commissioners were called upon to perform in determining into which class of the civil service the positions occupied by the relators herein

belonged was *quasi*-judicial  in its character and involved the exercise of judgment.    The statute simply directed them to classify.    It did not attempt to specify the class into which the positions held by the relators should be placed.    The duty was imposed upon the commissioners.    If they failed to perform it at all, the courts could undoubtedly have issued writs of *mandamus* to compel its performance.    But the writs in the proceedings at bar were not issued for that purpose.    The commissioners had acted."

The statute under consideration here did not attempt to direct the commissioners how to "classify all the offices and places of employment in such city."    The method of classification was left to them, and we are of opinion that the court cannot by *mandamus* direct them to adopt a certain standard of classification, which others may deem preferable to that employed.    The same method of classification—that of salary or compensation—seems to have been employed in the State Civil Service rules of New York (Collier on Civil Service, p. 278, section 11, rule 1).    It is argued that this method "is calculated to take away all the benefits intended to be accomplished by the system of promotional examination."    If in fact ward superintendents were members of the next lower rank, competitive examination among them for the office in controversy would be required by section 9 of the Act.    But under the classification adopted they are not so next in rank.    We are of opinion that in the present case promotional examination was not practicable under the Civil Service Act and the rules adopted.

For the reasons indicated the judgment of the Circuit Court is reversed and judgment will be entered here dismissing the petition.

*Reversed and judgment here.*