2021 IL App (2d) 190896-U
No. 2-19-0896
Order filed January 4, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| ELLEN M. RAIMAN, | ) ) | On Petition for Administrative Review from The Illinois Human Rights Commission. |
| Petitioner-Appellant, | ) ) | |
| v. | ) ) | No. 11-CN-4156 |
| THE ILLINOIS HUMAN RIGHTS COMMISSION, THE DEPARTMENT OF HUMAN RIGHTS, NANCY OLSSON, Compliance Manager Home Depot, BETSY M. MADDEN, Chief Legal Counsel, Illinois Department of Human Rights, CASE DISPOSITION UNIT OF THE ILLINOIS DEPARTMENT OF HUMAN RIGHTS, | ) ) ) ) ) ) ) ) ) ) | |
| Respondents-Appellees. | ) | |

_____

JUSTICE SCHOSTOK delivered the judgment of the court.
Presiding Justices Bridges and Justice Zenoff concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Petitioner did not make a *prima facie* case before the administrative body that her employer discriminated against her based on her mental illness when it disciplined and ultimately discharged her.  Rather, the evidence showed that the employer's actions had nondiscriminatory reasons, namely petitioner's multiple infractions of workplace policies.  Petitioner also failed to show that her employer did not reasonably accommodate her.

¶ 2 Petitioner, Ellen M. Raiman, appearing *pro se*, appeals the order of the Illinois Human Rights Commission (the Commission) sustaining the dismissal of her charge of discrimination filed with the Department of Human Rights (the Department). Petitioner alleges that her employer, Home Depot, discriminated against her based on her mental illness and that the Commission erred in sustaining the Department's dismissal for lack of substantial evidence. Respondents, the Commission, and the Department argue that the Commission did not abuse its discretion by sustaining the dismissal. We affirm.

¶ 3                                I. BACKGROUND

¶ 4 Petitioner worked at Home Depot from 2002 to 2010. Petitioner suffers from anxiety, depression, and panic disorder. In September 2010, Home Depot terminated her employment on the basis that she harassed a vendor and had previously been disciplined.

¶ 5 Petitioner filed a discrimination charge with the federal Equal Employment Opportunity Commission (EEOC), alleging that Home Depot discriminated against her based on her disability. The EEOC dismissed the charge, and petitioner sought review from the Department. She alleged that Home Depot discriminated against her by changing her work schedule that had been in place to accommodate her disabilities, by disciplining her, and by terminating her employment. She alleged that similarly situated nondisabled employees were treated more favorably. The Department initially dismissed the charge for lack of substantial evidence but then agreed that the dismissal should be vacated for it to investigate.

¶ 6 In investigating the charge, the Department conducted a fact-finding conference with petitioner and various representatives of Home Depot, and it reviewed 19 documents. The investigation report included petitioner's version of the events.

¶ 7    The record shows that petitioner was employed as a sales associate. On November 9, 2009, she requested a set schedule on Tuesdays, Thursdays, Fridays, and Saturdays, as a reasonable accommodation to allow her to take care of her special needs children and to reduce her stress level. Home Depot initially gave her a schedule of 7:00 a.m. to 5:30 p.m. on Tuesdays, Thursdays, and Fridays, and 6:00 am. to 2:30 p.m. on Saturdays. However, in the fall of 2010, petitioner was reassigned from the garden department, which was closing for the season, and Home Depot indicated to her that it might be necessary to adjust her schedule due to business need but that she would still have a set schedule and changes would be worked out with her in advance. On August 15, 2010, her store manager posted a schedule for the week of August 30, during which she was scheduled for Tuesday, Thursday, and Friday from 6:00 a.m. to 4:30 p.m., and Saturday from 9:00 a.m. to 5:30 p.m. On August 22, he posted a schedule for the week of September 6, scheduling her to work Tuesday from 9:00 a.m. to 7:30 p.m., Thursday from 6:00 a.m. to 4:30 p.m., Friday from 9:00 a.m. to 7:30 p.m., and Saturday from 9:00 a.m. to 5:30 p.m.

¶ 8    On August 12, 2010, petitioner's manager, Barry Zinke, issued her written counseling for talking on her cell phone during work hours. On August 31, 2010, Zinke told petitioner that he planned to issue her another warning for talking on her cell phone, based on a report from one of Home Depot's vendors that petitioner did not assist the vendor because she was talking on the phone. Petitioner denied that she was talking on her cell phone and claimed that the incident caused her to have a panic attack and be taken away by ambulance. Because petitioner left the premises, no formal discipline was issued on that date.

¶ 9    Home Depot later received an e-mail from the vendor, stating that petitioner called him eight times to ask why he had falsely accused her, even after he told her that he had seen her talking on the phone and that he would not discuss the matter further. Petitioner yelled at the vendor, and

he felt harassed. Petitioner admitted that she called two vendors to ask why they falsely accused her of being on her cell phone, but she claimed that neither would talk to her. She also contacted a Home Depot human resources manager and said that she had been wrongly accused of talking on her cell phone and could obtain a cell phone bill to prove it. Petitioner also said that Zinke had yelled at her, but witnesses reported that they saw petitioner become upset and yell but did not witness Zinke yell.

¶ 10 On September 9, 2010, Home Depot fired petitioner based on her history of prior discipline and for harassing the vendor, which was a major work rule violation that would normally result in immediate discharge. Home Depot introduced evidence that, along with the August 2010 incidents, petitioner received discipline on six other occasions from August 29, 2009, through February 6, 2010: one for poor performance, two for violation of policies, one for insubordination, and two for attendance violations. Home Depot also introduced evidence that from August 12, 2009 through August 12, 2010, it issued written discipline to four sales associates, none of whom had a reported disability, and that, from September 9, 2009 through September 9, 2010, four other sales associates were discharged, none with a reported disability.

¶ 11 The investigator recommended a finding of lack of substantial evidence, and the Department dismissed the charge. Petitioner requested a review by the Commission, arguing that she previously worked in a higher position at Home Depot where she had better pay and more freedom. She stated that, after Zinke became the store manager, she was demoted and improperly disciplined. She stated that the schedule change prevented her from taking medication at the correct time, and she believed that she was discriminated against for taking vacation time during the holiday season and also because of her disabilities. She denied doing any of the things she was disciplined for, and she claimed that she was on break when she made phone calls. She produced

a bill showing that she made calls of shorter duration than the times alleged. She also produced a doctor's note requesting that she be allowed to talk occasionally with health care professionals during work hours. She said that other employees lied about her actions and that the vendor was emotionally abusing her. She stated that she called him only four times. Petitioner also took issue with the Department's investigation, alleging that witnesses told the investigator that Zinke treated petitioner differently from other employees and that the Department failed to put that in its report. The Department filed a response arguing that petitioner failed to provide any evidence that Home Depot discriminated against her based on her disabilities.

¶ 12    The Commission sustained the dismissal. The Commission found that petitioner failed to make a *prima facie* case of unlawful discrimination, specifically because she failed to show that Home Depot's actions were motivated by her disabilities. Instead, the evidence showed that Home Depot had a nondiscriminatory reason for terminating her employment based on her harassment of the vendor. The Commission also found that petitioner failed to show that Home Depot treated similarly situated nondisabled employees more favorably. Finally, the Commission found that petitioner did not establish that Home Depot provided no reasonable accommodation for her. She appeals.

¶ 13                                II. ANALYSIS

¶ 14    Petitioner argues that the Department did not complete a thorough investigation and that the Commission erred in dismissing the charge. Essentially, petitioner disputes the factual findings of the Department and the Commission. She also asks for damages.

¶ 15    Before reaching the merits, we note that petitioner's brief is lacking in many respects. In particular, Illinois Supreme Court Rule 341(h)(7) (eff. May 25, 2018) requires an appellant's brief to contain argument supported by citations of the authorities and the pages of the record relied on.

"A failure to cite relevant authority violates Rule 341 and can cause a party to forfeit consideration of the issue." *Kic v. Bianucci*, 2011 IL App (1st) 100622, ¶ 23. "A brief that lacks any substantial conformity to the pertinent supreme court rules may justifiably be stricken." *Hall v. Naper Gold Hospitality LLC*, 2012 IL App (2d) 111151, ¶ 7.

¶ 16    In her briefs, petitioner cites only two cases, *Baker v. Miller*, 159 Ill. 2d 249 (1994) and *Rozsavolgvi v. City of Aurora*, 2016 IL App (2d) 150493, neither of which involve a review of an order of the Commission sustaining a dismissal for lack of substantial evidence. She also includes a bare citation to section 1-102(A) of the Illinois Human Rights Act (775 ILCS 5/1-102(A) (West 2018)), which contains an antidiscrimination "declaration of policy." She makes no attempt to apply these authorities to her case and has failed to provide any authority to support her arguments. Thus, we are free to strike petitioner's brief and dismiss the appeal. However, striking an appellate brief "is a harsh sanction and is appropriate only when the violations of procedural rules hinder our review." *Hall*, 2012 IL App (2d) 111151, ¶ 15. Here, the issues are apparent, and we have the benefit of a detailed and cogent brief from respondents. Thus, we will address the merits of the appeal. See *Twardowski v. Holiday Hospitality Franchising, Inc.*, 321 Ill. App. 3d 509, 511 (2001).

¶ 17    The Illinois Human Rights Act (Act) (775 ILCS 5/1-101 et seq. (West 2018)) prohibits discrimination against a person on the basis of disability. *Id.* § 1-102(A). Under the Act, upon the filing of a discrimination charge, the Department must conduct a full investigation of the allegations and prepare a written report. *Id.* § 7A-102(C)(1), (D)(1). The Department must then review the report to determine whether there is "substantial evidence" that the alleged discrimination has occurred. *Id.* § 7A-102(D)(2). "Substantial evidence," as defined by the Act, is "evidence which a reasonable mind accepts as sufficient to support a particular conclusion and

which consists of more than a mere scintilla but may be somewhat less than a preponderance." *Id.* § 7A-102(D)(2).

¶ 18    If the Department determines that there is no substantial evidence to support the allegation, the charge is dismissed. *Id.* § 7A-102(D)(3). The petitioner may seek review by the Commission of the dismissal. *Id.* If the Commission sustains the dismissal, the petitioner may seek review in the appellate court. *Id.* § 8-111(B)(1) (West 2018); *Allen v. Lieberman*, 359 Ill. App. 3d 1170, 1180 (2005).

¶ 19    We review the decision of the Commission, not the Department. See *Zaderaka v. Illinois Human Rights Commission*, 131 Ill. 2d 172, 180 (1989). The Commission's findings of fact are entitled to deference and "shall be sustained unless the court determines that such findings are contrary to the manifest weight of the evidence." 775 ILCS 5/8-111(B)(2) (West 2018); see *Stone v. Department of Human Rights*, 299 Ill. App. 3d 306, 314 (1998). The Commission's decision to sustain the dismissal of a charge will be reversed only where the decision was arbitrary and capricious or an abuse of discretion. *Owens v. Department of Human Rights*, 403 Ill. App. 3d 899, 917 (2010). A decision is arbitrary and capricious if it contravenes legislative intent, fails to consider a critical aspect of the matter, or offers an explanation so implausible that it cannot be considered as a result of the exercise of the agency's expertise. *Young v. Illinois Human Rights Commission*, 2012 IL App (1st) 112204, ¶ 33. An abuse of discretion will be found where no reasonable person could agree with the decision of the Commission. *Id.*

¶ 20    When analyzing employment discrimination cases under the Act, the petitioner has the initial burden of proving, by a preponderance of the evidence, a *prima facie* case of unlawful discrimination. *Illinois Bell Telephone Co. v. Illinois Human Rights Commission*, 190 Ill. App. 3d 1036, 1048 (1989). To establish a *prima facie* case, the petitioner "must show by a preponderance

of the evidence that: (1) she is a member of a protected class; (2) she was performing satisfactorily; (3) she was discharged despite the adequacy of her work; and (4) a similarly situated employee who was not a member of the protected group was not discharged." *Owens v. Department of Human Rights*, 356 Ill. App. 3d 46, 52 (2005).

¶ 21 Once a petitioner establishes a *prima facie* case, "the employer must articulate, not prove, a legitimate, nondiscriminatory basis for its action." *Id.* The burden then shifts back to the petitioner to prove by a preponderance of the evidence that the employer's articulated reason was not true and was a pretext for unlawful discrimination. *Id.* A petitioner's failure "to present substantial evidence of a *prima facie* discrimination claim or to disprove an employer's articulated reason for discharge warrants dismissal of the charge." *Id.*

¶ 22 Here, the Commission correctly found that petitioner failed to establish that her disabilities motivated Home Depot's actions. Home Depot produced evidence that it discharged petitioner for harassing a vendor and for several prior disciplinary incidents, including speaking on a cell phone during work. Petitioner's claim that Zinke treated her differently because of her disabilities is based on speculation, not evidence. While petitioner denied using her phone during working hours, others provided evidence to the contrary. Petitioner claimed that she had a doctor's note stating that she should be allowed to speak occasionally to healthcare professionals during work hours, but there was no evidence that she informed Home Depot of this note or requested an accommodation along these lines. Petitioner takes issue with several factual findings, arguing that her fellow employees lied about her phone use and that Zinke procured their false statements. She also asserts that Home Depot's other disciplinary actions lacked validity, but the record rebuts her claim. On the whole, her accusations are either speculative, unsupported by evidence, or disputed in the record.

¶ 23 In any case, the record is clear that the ultimate impetus for petitioner's termination was her harassing the vendor. Petitioner admitted that she called the vendor, but she disputed the number of times that she called. Regardless, her act of harassing the vendor was a major work-rule violation warranting termination for a first offense; it was clearly a non-discriminatory basis for her termination.

¶ 24 Further, even if Home Depot was in error when it disciplined and ultimately discharged petitioner, there is a lack of evidence that it did so in bad faith based on her disabilities. "A good-faith belief for an employment decision is sufficient to rebut an intentional discrimination charge." *Shah v. Illinois Human Rights Commission*, 192 Ill. App. 3d 263, 273-74 (1989). See also *Sola v. Illinois Human Rights Commission*, 316 Ill. App. 3d 528, 544-45 (2000) (court will not substitute its business judgment for that of the employer).

¶ 25 Moreover, petitioner failed to provide evidence of non-disabled employees who violated store policy yet were treated differently, while Home Depot showed that it disciplined non-disabled employees.

¶ 26 The Commission also properly found that petitioner did not prove that Home Depot failed to accommodate her. "Employers *** must make reasonable accommodation of the known physical or mental limitations of otherwise qualified disabled applicants or employees, unless the employer or labor organization can demonstrate that accommodation would be prohibitively expensive or would unduly disrupt the ordinary conduct of business." 56 Ill. Adm. Code 2500.40(a) (2009). The employee "bears the burden of asserting the duty to accommodate; showing that an accommodation was, in fact, requested; and demonstrating that accommodation was necessary for adequate performance." *Owens*, 356 Ill. App. 3d at 53. In some circumstances, a modification can be an appropriate accommodation for a disabled employee. *Illinois Bell*

*Telephone Co.*, 190 Ill. App. 3d at 1051. But the duty to accommodate only extends to accommodating a disabled employee in the employee's present position and does not require employers to transfer a handicapped employee to a different shift. *Fitzpatrick v. Human Rights Commission*, 267 Ill. App. 3d 386, 392 (1994).

¶ 27    The Commission found, and the record shows, that petitioner did not prove that she needed to work specific hours, but instead that she requested a set schedule. Home Depot agreed to a set schedule, noting that it might be necessary to adjust the schedule due to business need but that changes would be worked out with her in advance. When petitioner's hours changed due to the garden center closing for the season, her days remained the same and she was given two weeks' notice of the change. Petitioner did not provide evidence that the notice was insufficient to accommodate her or that her hours were changed as a pretext for discrimination based on her disabilities. Petitioner stated that the change affected the times that she took medication, but she has not shown that she could not take the medication while working or that she asked for an accommodation for that purpose.

¶ 28    Finally, petitioner argues that the Department's investigation was inadequate. However, the record shows that the Department conducted a complete investigation that included a fact-finding conference with petitioner. Accordingly, that contention lacks merit.

¶ 29                              III. CONCLUSION

¶ 30    The decision of the Commission sustaining the Department's dismissal for lack of substantial evidence was not an abuse of discretion. Accordingly, we affirm.

¶ 31    Affirmed.