NOTICE

Decision filed 10/19/21. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 190433-U

NO. 5-19-0433

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| DOBBIE WATSON, | ) | On Petition for Review of an |
| | ) | Order of the Illinois Human |
| Petitioner, | ) | Rights Commission. |
| | ) | |
| v. | ) | |
| | ) | Charge No. 2018SF2274 |
| THE ILLINOIS HUMAN RIGHTS COMMISSION, | ) | |
| THE DEPARTMENT OF HUMAN RIGHTS, and | ) | ALS No. 19-0095 |
| COM-PAC INTERNATIONAL, INC., | ) | |
| | ) | |
| Respondents. | ) | |

_____

JUSTICE WHARTON delivered the judgment of the court.
Justices Cates and Vaughan concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The Illinois Human Rights Commission did not abuse its discretion in sustaining the dismissal of an employee's charge of disability discrimination and failure to accommodate where there was no evidence that the employee's conditions were permanent, no evidence that the employee could perform the functions of his regular job even with accommodation, and no evidence that the employee requested any accommodation to help him perform the duties of his regular job even though he did request light duty assignments.

¶ 2    The petitioner, Dobbie Watson, filed a disability discrimination charge with the Illinois Department of Human Rights (DHR). The disabilities at issue involved injuries to his right wrist and elbow. In the charge, Watson alleged that his employer, Com-Pac International, Inc. (Com-Pac), refused to provide reasonable accommodations to him as a disabled employee and that it discriminated against him on the basis of disabilities. The DHR dismissed four counts of his

1

charge due to a lack of substantial evidence, and it dismissed the fifth count, finding that it lacked jurisdiction to investigate that claim because it was not timely filed. The Illinois Human Rights Commission (HRC) sustained the dismissal. Watson filed a petition for direct review with this court, arguing that (1) undisputed evidence supported his claim that Com-Pac discriminated against him by refusing to provide him with light duty assignments; (2) Com-Pac discriminated against him because of his disability by "fabricating" a rate efficiency quota that other employees did not meet; (3) Com-Pac failed to provide a reasonable accommodation when it refused to lower the rate efficiency quota; and (4) Com-Pac discriminated against him on the basis of religion. We affirm.

¶ 3                    I. BACKGROUND

¶ 4     Watson was hired by Com-Pac late in 1997 or early in 1998. He worked for the company in various capacities. In 2016, he was working in the position of inspector-packer when he began to experience pain in his right hand and elbow. He was diagnosed with carpal tunnel syndrome in his right wrist and cubital tunnel syndrome in his right elbow. His treating physicians did not believe these conditions would be permanent.

¶ 5     From September to December 2016, Watson was given light duty assignments to perform instead of his regular job duties. On December 28, 2016, he underwent surgery. Pursuant to the recommendation of his doctor, Watson remained off work for several weeks. On February 13, 2017, he returned to work, once again performing light duty assignments. On March 28, 2017, Watson again stopped working pursuant to his doctor's recommendation. On May 22, 2017, he returned to work and was again given light duty assignments. Four days later, however, he complained that the tasks he was assigned were hurting his hand. He therefore stopped working again.

¶ 6      On July 13, 2017, Watson asked to return to work with light duty assignments. Human resources manager Gwen Norton told him that no such positions were available at that time. Watson repeated this request in September and November 2017, but no light duty assignments were available at those times either.

¶ 7      On February 16, 2018, Watson's doctor released him to work with only one restriction: he was to lift no more than 50 pounds for the next six months. Norton told Watson that there was no work available with this restriction. She told him to come back when he was cleared for full duty with no restrictions.

¶ 8      On June 4, 2018, Watson perfected a five-count charge of discrimination with the DHR. In counts A and B, Watson alleged that Com-Pac failed to accommodate disabilities unrelated to his ability to perform the essential functions of his job on July 13, 2017, and again on February 16, 2018. Count A related to the carpal tunnel syndrome in Watson's right wrist, while count B related to the cubital tunnel syndrome in his right elbow. In counts C and D, Watson alleged that Com-Pac discriminated against him on the basis of these disabilities by refusing to allow him to return to work after his medical leave. He alleged that this occurred between July 13, 2017, and April 2018. In count E, Watson alleged that Com-Pac discriminated against him by subjecting him to unequal terms of employment due to his disabilities in October 2016. Specifically, he complained that he was required to clock out for lunch while performing light duty assignments.

¶ 9      On November 29, 2018, the DHR issued a notice of dismissal of Watson's charge. The DHR dismissed counts A, B, C, and D for lack of substantial evidence, and it dismissed count E for lack of jurisdiction, explaining that the alleged unequal treatment occurred in October 2016, and Watson filed his claim 273 days after the end of that month, long past the 180-day deadline for filing charges with the DHR. See 775 ILCS 5/7A-102(A)(1) (West 2016). (We note that the

3

pertinent statute was subsequently amended to provide a longer time limit. See Pub. Act 100-588, § 30 (eff. June 8, 2018). On February 19, 2019, Watson filed a request for review with the HRC.

¶ 10    On September 17, 2019, the HRC issued an order sustaining the notice of dismissal. The HRC found that counts A and B were properly dismissed for lack of substantial evidence. It found that although Watson asked for light duty assignments, there was no evidence that he asked for reasonable accommodations to allow him to perform his regular job. The HRC explained that the duty to accommodate an employee's disability does not include a requirement to provide the employee with a different position. The HRC further noted that Watson's injuries did not meet the statutory definition of a disability, both because there was no evidence that he could perform the essential functions of his job with or without accommodation and because there was no evidence that Watson's conditions were permanent. The HRC found that counts C and D were likewise properly dismissed for lack of substantial evidence because Watson's conditions did not constitute disabilities within the statutory definition. The HRC found that count E was properly dismissed for lack of jurisdiction because Watson did not file his charge within the 180-day time limit then in effect. On October 15, 2019, Watson filed a petition with this court seeking direct review of the HRC's order.

¶ 11                                    II. ANALYSIS

¶ 12    Before addressing the merits of Watson's contentions, we must first consider which issues are properly before us and which issues have been forfeited. In his brief, Watson does not address the dismissal of count E of his charge for lack of jurisdiction. As such, he has forfeited any consideration of that claim. See Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018). Watson argues that undisputed evidence supports the claims he raised in counts C and D of the charge, in which

4

he alleged that Com-Pac discriminated against him by refusing to allow him to return to work. Although Watson does not specifically argue that undisputed evidence also supports the claims of failure to accommodate he raised in counts A and B, he presented identical evidence in support of all four counts and the HRC's conclusion that Watson's injuries did not meet the statutory definition of "disabilities" served as a basis for denying all four. Thus, we will consider Watson's argument as it relates to counts A through D.

¶ 13    Additionally, we note that Watson raises issues that he did not present to the DHS or HRC. Specifically, he argues that in June 2017, Com-Pac discriminated against him by "fabricating" a rate efficiency quota of 25 boxes per hour, a rate that other employees were not meeting. He further argues that Com-Pac failed to accommodate his disabilities by lowering the rate efficiency quota to 20 boxes per hour and that Com-Pac discriminated against him on the basis of religion. Our review of the HRC's decision, however, is limited to the questions of fact and law presented in the administrative record. *Young v. Illinois Human Rights Comm'n*, 2012 IL App (1st) 112204, ¶ 50 (citing 735 ILCS 5/3-110 (West 2010)). As such, we will not consider these arguments. The only question before us, then, is whether the HRC properly dismissed counts A through D of Watson's charge for lack of substantial evidence. We turn our attention to the merits of that question.

¶ 14    Claims of employment discrimination under the Illinois Human Rights Act (775 ILCS 5/1-101 *et seq.* (West 2016)) are analyzed under the three steps articulated by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). See *Department of Corrections v. Human Rights Comm'n*, 298 Ill. App. 3d 536, 540 (1998). The first step requires the employee to establish a *prima facie* case of discrimination. If the employee meets this burden, it gives rise to a rebuttable presumption of unlawful discrimination. *Id.* The burden then

shifts to the employer to rebut this presumption by presenting a legitimate, nondiscriminatory reason for its actions. If the employer succeeds in meeting its burden of rebutting the presumption of discrimination, the employee must prove by a preponderance of the evidence that the employer's justification is merely a pretext for unlawful discrimination. *Id.* This case involves the first of these three steps—the employee's burden of presenting a *prima facie* case of discrimination.

¶ 15 To establish a *prima facie* case of disability discrimination, an employee must demonstrate that (1) he has a disability as defined under the applicable statute, (2) his disability is unrelated to his ability to perform the functions of his job, and (3) the employer took an adverse action against the employee because of his disability. *Harton v. City of Chicago Department of Public Works*, 301 Ill. App. 3d 378, 385 (1998). The statutory definition of a disability includes "a determinable physical or mental characteristic" which, for purposes of employment discrimination, "is unrelated to the person's ability to perform the duties of a particular job or position." 775 ILCS 5/1-103(I)(1) (West 2016). Thus, if an employee's conditions render him unable to perform his job duties even with reasonable accommodation, he is not disabled under the statutory definition. *Harton*, 301 Ill. App. 3d at 386. Regulations promulgated under the applicable statute also exclude temporary conditions from the definition. 56 Ill. Adm. Code 2500.20(b)(1)(A).

¶ 16 To establish a *prima facie* case of failure to accommodate, an employee must demonstrate that he has a disability within the statutory definition, that he requested an accommodation, and that the accommodation requested was necessary for adequate job performance. See *Department of Corrections*, 298 Ill. App. 3d at 541 (citing *Milan v. Human Rights Comm'n*, 169 Ill. App. 3d 979, 984 (1988)). However, an employer's duty to

accommodate a disabled employee extends only to the employee's present position; the employer is not required to provide the employee with a different position. *Fitzpatrick v. Human Rights Comm'n*, 267 Ill. App. 3d 386, 392 (1994).

¶ 17    A charge of employment discrimination must be dismissed if there is not substantial evidence to support the employee's claims. 775 ILCS 5/7A-102(D)(3) (West 2016). "Substantial evidence is evidence which a reasonable mind accepts as sufficient to support a particular conclusion and which consists of more than a mere scintilla but may be somewhat less than a preponderance." *Id.* § 7A-102(D)(2). We review orders of the HRC sustaining the DHS's dismissal of a charge for lack of substantial evidence for an abuse of discretion. *Young*, 2012 IL App (1st) 112204, ¶ 32. The HRC abuses its discretion if its decision is arbitrary or capricious or if no reasonable person could take its position. *Id.* ¶ 33.

¶ 18    Here, Watson presented several letters from his treating physicians indicating that his conditions of carpal tunnel syndrome and cubital tunnel syndrome were temporary. Because the statutory definition of a disability has been interpreted to exclude temporary conditions (see 56 Ill. Adm. Code 2500.20(b)(1)(A)), this alone defeats all four counts of the charge that are at issue before us. As we have just discussed, claims of disability discrimination and failure to accommodate each require the employee to present evidence that he has a disability within the statutory definition. See *Harton*, 301 Ill. App. 3d at 385; *Department of Corrections*, 298 Ill. App. 3d at 541. Watson's claims of disability discrimination (counts C and D of the charge) were properly dismissed for the additional reason that he presented no evidence that he could perform the duties of his position, either with or without accommodation. See *Harton*, 301 Ill. App. 3d at 386. Similarly, Watson's claims of failure to accommodate (counts A and B) were properly dismissed because there was no evidence that he asked Com-Pac to provide accommodations to

help him perform the duties of the position he held. As stated previously, an employer has no obligation to provide a disabled employee with a different job, such as the light duty assignments Watson requested. See *Fitzpatrick*, 267 Ill. App. 3d at 392. For these reasons, we find no abuse of the HRC's discretion in its decision to sustain the DHR's notice of dismissal for lack of substantial evidence.

¶ 19                                    III. CONCLUSION

¶ 20    For the foregoing reasons, we affirm the decision of the Illinois Human Rights Commission.

¶ 21    Affirmed.